IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-03121-CR-S-MDH |
| ) | |
| CARLIS A. SCOTT, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant moves to suppress any and all evidence or statements derived as a result of an October 14, 2013 warrantless search of a 2013 Kia Sorento and the search of containers within this vehicle, the seizures of any items located in the vehicle, and any and all statements allegedly made by Defendant after the search and seizure as fruits of the poisonous tree. (Doc. 60.) The undersigned held hearings on the suppression issues on September 22, 2016 and October 3, 2016. (*See* Docs. 68, 71, 72, and 74.) Defendant was present with his attorney, David Mercer, and the Government was represented by Assistant United States Attorney Casey Clark. (*See* Docs. 68, 71, 72, and 74.) During the hearings, the Court heard testimony from: Donald Coots, a corporal with the Bolivar, Missouri Police Department ("BPD") at the time of the events at issue; Sarah Ehbrecht, an officer with the BPD at the time of the events at issue; Nicholas Carney, an officer with the BPD at the time of the events at issue; Brandon Toler, a corporal with the BPD; and Brian Fox, special agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF").

After the hearings, the parties asked the undersigned to informally stay proceedings in this case to settle some issues. (Doc. 76.) On February 24, 2017, Defendant informed the Court that discussions between the parties had concluded and wished for the undersigned to consider the pending Motions.[1] (*Id.*) For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion to Suppress, (Doc. 61), be **DENIED**.

### I. Findings of Fact[2]

On October 14, 2013, officers from the BPD responded to a motor vehicle accident at 1855 Springfield Avenue in Bolivar, Missouri in the Western District of Missouri. Upon arrival BPD Corporal Donald Coots observed a 2013 Kia Sorento located inside of a building identified as a Verizon Russell Cellular store. Cpl. Coots observed a substantial amount of damage to the front of the building, in the shape of a large hole that was approximately 12 by 15 feet wide. The vehicle had driven through a wall on the inside of the building. Cpl. Coots testified that the vehicle was inoperable because it had a flat tire and had been driven through a building. BPD Officer Sarah Ehbrecht observed that the vehicle could not be driven out of the building due to the damage sustained by the vehicle. When Cpl. Coots and Officer Ehbrecht arrived on scene, they were trying to ascertain whether the incident was a result of a traffic accident or whether something else had caused the incident.

Cpl. Coots and Officer Ehbrecht made contact with two people outside of the vehicle, identified as Margaret Porter and Carlis Scott, the defendant in this case. Porter informed the officers that she had been driving the vehicle at the time of the accident, while Scott was a passenger. Cpl Coots asked Scott where he was from. Scott stated he was from Kansas City

---

[1] Scott also filed a Motion to Dismiss the Indictment, (Doc. 67), which is not addressed in this Report and Recommendation.

[2] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearings on the instant Motion to Suppress. The hearing transcripts appear as Docs. 71 and 74. The Government's exhibit indexes appear as Doc. 69 and 73. Defendant did not move to admit any exhibits during the hearing.

and, upon further questioning, told Cpl. Coots the vehicle was a rental car from Kansas City. Cpl. Coots asked Scott where they were traveling to, to which Scott responded that they were going to Springfield, Missouri. Scott also indicated that the rental paperwork was in the center console of the vehicle. Cpl. Coots asked Scott if he could retrieve it, and Scott verbally consented. Cpl. Coots entered the vehicle and observed a silver purse on the passenger floorboard near where Scott would have sat as the passenger. He found the rental agreement in the center console, and also noticed two cellphones in the center console. He reviewed the paperwork, which indicated that Scott had rented the vehicle from Avis in Kansas City, Missouri on Oct. 1, 2013, and was to return it on Oct. 22, 2013.

While Cpl. Coots was interviewing Scott, Officer Ehbrecht spoke with Porter. Officer Ehbrecht asked what happened, and Porter stated that she was driving and could not stop the vehicle. She also stated that the vehicle malfunctioned and the brake pedal did not work; that she tried to stop the vehicle, but could not. Both Officer Ehbrecht and Cpl. Coots noted that Porter was behaving somewhat erratically throughout her contact with them, and Cpl. Coots believed that she could have been under the influence of some drug. Officer Ehbrecht ran Porter's name and identifiers through dispatch. Dispatch advised her that Porter had no valid license status and had a warrant for prostitution out of Independence, Missouri. Cpl. Coots informed Porter that she did not have a valid license, at which point the officers observed Porter become nervous. Officer Ehbrecht noticed Porter's face became very pale. Additionally, Officer Ehbrecht observed Porter's body shaking and her eyes moving rapidly back and forth.

Cpl. Coots then asked Porter about her driving status. She replied that she had a valid license, but did not have her license on her because her purse had been stolen. Cpl. Coots then advised Porter that he had seen a purse on the floorboard of the vehicle. Porter stated that the

3

purse belonged to her, but was not the purse that had her identification in it. Cpl. Coots asked her for consent to search the purse to verify that her identification was not in it; Porter verbally consented to a search of her purse.

Cpl. Coots retrieved the purse from the vehicle, opened it, and found a wallet inside. While searching the wallet for identification, he discovered 15 small baggies containing white powder. He observed that the baggies had black club symbols on the outside and approximately 9 of the 15 bags were packed in a sandwich bag. From his experience and training, Cpl. Coots knew that these items were consistent with possession and distribution of illegal controlled substances. He did not find any identification inside the wallet. He then advised BPD Officer Nicholas Carney[3] to maintain security of the vehicle and not to search it until Cpl. Coots instructed him to do so.

Cpl. Coots then re-contacted Porter and advised her of her *Miranda* rights. Porter indicated to Cpl. Coots that she understood her rights. Cpl. Coots then advised Porter that he had located baggies of an unknown powdery substance in her wallet and asked what it was. Porter told him it was cocaine and said "it is all mine." Cpl. Coots told Porter that the substance appeared to be packaged for distribution. At that point, Cpl. Coots noticed Porter became more nervous and was looking over her shoulder at Scott. Porter then stated that she had a drug problem and used a lot of cocaine. Cpl. Coots asked Porter if Scott knew she had cocaine, and Porter stated that he knew she was a cocaine user. Cpl. Coots asked if there was anything else illegal in the vehicle. Porter stated that she had a bottle of "wet" in her purse, then clarifying that she meant another drug.

---

[3] During the first hearing, Officer Carney testified he was terminated from the BPD because he and his son rode a motorcycle without helmets, which is a violation of the law. However, at the second hearing, the Government and Defense counsel entered a stipulation based on information obtained from the BPD that indicates that Officer Carney was terminated because he misled his superiors regarding reports he was supposed to complete. The undersigned has taken this information into account in assessing Officer Carney's credibility.

Cpl. Coots placed Porter in handcuffs and she was placed in a patrol vehicle for further investigation. Cpl. Coots then returned to the vehicle and further searched the silver purse. He located a plastic bag containing a vial with a brown liquid inside. Additionally, he found two more cellphones. Cpl. Coots showed Porter the vial and asked her what it was. She stated it was PCP. Cpl. Coots secured the cocaine, PCP, and the purse in a patrol vehicle. He then returned to Scott and asked him if he knew Porter was a cocaine user. Scott stated that he thought she was, but stated that she should not have any with her. Cpl. Coots then noticed that Scott began sweating and looking from side to side. Cpl. Coots then advised Scott that he was going to be detained for further investigation. Cpl. Coots handcuffed the defendant and searched his person for contraband, finding $260 in United States currency in $20, $10, and $5 bills which, when combined with the multiple baggies of cocaine, Cpl. Coots believed was indicative of the distribution of controlled substances. Cpl. Coots also knew, from his training and experience, that Highway 13, between Kansas City and Springfield, was a known drug-trafficking route. The officers then placed Scott in a patrol vehicle.

Based upon the discovery of the drugs near where Scott had been sitting in the vehicle, loose cash, and Cpl. Coots' knowledge regarding drug trafficking in the area, Cpl. Coots and Officer Carney searched the vehicle. During the search, the other BPD officer found a trash bag in the rear open cargo area of the Kia. Inside the trash bag, he located a loaded firearm wrapped inside a fur coat. Cpl. Coots observed that the bag predominantly contained male clothing, but also contained pieces of clothing that appeared to be for a female.

Cpl. Coots then spoke to the defendant and advised him of his *Miranda* rights. While the defendant advised that he understood his rights, Cpl. Coots then asked if Scott was a felon, which he replied that he was. He then began asking Scott questions about the firearm, the

answers to which Cpl. Coots could not hear and so he ceased questioning. After re-contacting Porter regarding the firearm, Cpl. Coots directed Officer Carney to place all of the items back in the Kia so it could be towed and secured for a more thorough search of the vehicle. Officer Carney placed everything except for the firearm and drugs back in the vehicle.

Pursuant to BPD standards and procedures, Officer Ehbrecht completed a "Crime Inquiry and Inspection Report/Authorization to Tow" form and listed "Accident" and "Custodial Arrest" as the reasons for the towing of the Kia. Officer Ehbrecht and Cpl. Coots testified during the hearing that BPD standards and procedures allow for the tow of a vehicle when its occupants have been arrested and there is no licensed driver available to move it. The BPD guidelines give officers the options of contacting the vehicle's owner when its occupants have been taken into custody, but the decision as to whether a vehicle should be towed is left to an officer's discretion. Officers did not attempt to contact Avis prior to towing the vehicle. The form noted that the vehicle had damage to the undercarriage and windshield, and that the vehicle had a flat front left tire. A private towing company towed the Kia to a secure garage. Both Cpl. Coots and Officer Ehbrecht testified that BPD guidelines and procedures require officers to inventory towed vehicles for property safekeeping. Officer Ehbrecht conducted such an inventory search in this case. On the "Crime Inquiry and Inspection Report/Authorization to Tow" form, Officer Ehbrecht listed an inventory of the items in the vehicle at the time of the tow.

On October 15, 2013, officers applied for, received, and executed a search warrant from the 30th Judicial Circuit in Polk County, Missouri on the secured Kia. The affidavit supporting the application for the issued search warrant contained information learned during the BPD investigation the previous day regarding the discovery of the cocaine. The affidavit did not include information about the discovery of the PCP or the firearm, as those items had been

6

Case 6:13-cr-03121-MDH   Document 77   Filed 03/13/17   Page 6 of 12

seized on October 14, 2013 by Cpl. Coots at the scene of the accident.  As a part of their execution of the search warrant, and pursuant to BPD procedure, Cpl. Coots filled out a "Property Submission Report/Inventory of Property Taken," listing the items found in the vehicle on October 15, 2013.  During the hearing, Cpl. Coots testified that officers would have searched the area where the gun was found during the course of the execution of this warrant.

On October 18, 2013, ATF Special Agent Brian Fox and ATF Task Force Officer Allen Bayer interviewed Scott at the Bolivar Police Department.  Special Agent Fox advised the defendant of his *Miranda* rights.  Scott stated that he understood his rights and he agreed to speak with them. Post-*Miranda*, Scott admitted that the firearm found in the Kia belonged to him.  Approximately four months later, this indictment followed.  (Doc. 1.)

## II. Conclusions of Law

Defendant contends that the warrantless search of the 2013 Kia Sorento on October 14, 2013 was unreasonable under the Fourth Amendment.  The Government asserts that the search falls under exceptions to the warrant requirement, specifically the automobile exception and the inevitable discovery exception.  The parties' arguments are taken up below.

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government.  U.S. Const. amend IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005).  Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed.  *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011).  However, searches conducted pursuant to established and well-delineated exceptions do not require a warrant and are thus not unreasonable.  *Arizona v. Gant*, 556 U.S. 332, 338 (2009).  For example, one exception to the warrant requirement allows for the warrantless search of automobiles if there is probable cause to

7

believe the vehicle contains evidence of criminal activity.  *See United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011).  Probable cause exists when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010) (internal marks and quotations omitted).

Here, Cpl. Coots and Officer Carney believed they had probable cause to search the vehicle pursuant to the automobile exception.  The Court agrees.  First, Cpl. Coots and Officer Ehbrecht were already on alert that the incident at hand was perhaps more than a regular traffic accident when they arrived on scene because the Kia had been driven through a storefront.  Second, Cpl. Coots obtained consent from Porter to search her purse, which was located inside the vehicle near where Scott would have been sitting.  Inside that purse, he discovered several baggies of cocaine that, based on his knowledge and experience, appeared to be packaged for distribution.  When he asked Porter if there were other illegal items in the vehicle, she stated that she also had another drug.  Cpl. Coots searched her purse further and located that drug, which was later identified as PCP.  Third, during the course of retrieving the rental agreement from the car and searching the purse, Cpl. Coots located a total of four cell phones.  Fourth, Cpl. Coots and Officer Ehbrecht both observed the demeanor of Porter and Scott.  When questioned about the drugs, they became nervous, began sweating, and started looking from side to side.  Finally, after detaining Scott for suspicion of drug trafficking activity, Cpl. Coots found approximately $260 in loose cash on him.  Cpl. Coots also knew from training and experience that Highway 13, which runs between Kansas City and Springfield, is a corridor used for drug trafficking.  Considering all of these circumstances, Cpl. Coots had a valid belief that other contraband would

8

Case 6:13-cr-03121-MDH  Document 77  Filed 03/13/17  Page 8 of 12

be located in the car and that Porter and Scott were involved in drug trafficking.  Therefore, there was probable cause for the officers to search the vehicle.

There is, however, an issue regarding whether the automobile exception applies considering the mobility of the vehicle.  "The Supreme Court has consistently recognized ready mobility as one of the bases for the automobile exception." *United States v. Hepperle*, 810 F.2d 836, 840 (8th Cir. 1987).  "Ready mobility is not, however, the only basis for the exception . . . Even in cases where an automobile is not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Id.* at 840 (citing numerous cases supporting this proposition; internal quotation and marks omitted).  "It is the characteristic mobility of all automobiles, not the relative mobility of the car in a given case, . . . which allows for warrantless searches when probable cause exists." *United States v. Perry*, 925 F.2d 1077, 1080 n. 4 (8th Cir. 1991).  Moreover,

In this case, Cpl. Coots testified that he labeled the car as inoperable because it had a flat tire and was inside of a building.  Similarly, Officer Ehbrecht marked the vehicle as damaged on the tow form, specifically noting the damage to the windshield, the undercarriage, and tire.[4]  However, just prior to their arrival on scene the car was readily mobile because it had been driven into a building.  Disregarding whether the Kia was readily mobile, it is undisputed that Scott had a lesser expectation of privacy in this vehicle.  *See Hepperle*, 810 F.2d at 840.  Further, there was no evidence that the car was "permanently immobile," meaning that the automobile exception would apply.  *See United States v. Maggard*, 221 F.3d 1345 (Table), 2000 WL 680394, at *1 (8th Cir. 2000) (truck stuck in a ditch had not lost its inherent mobility and therefore the automobile exception was applicable).  Additionally, as noted, the officers believed

---

[4] The undersigned notes that Officer Carney testified that while the car had a flat tire, he believed it was still in running condition.  Given the issues with Officer Carney's credibility, the undersigned has given this testimony little weight.

there was fair probability that contraband or evidence of a crime will be found in the car because of the drugs found in Porter's purse, which was inside of the vehicle, and the other observations and information described above. As such, Cpl. Coots and Officer Carney validly conducted a search pursuant to the automobile exception regardless of whether the car was operable at the time of the search. *See Hepperle*, 810 F.2d at 840 (concluding that a search pursuant to the automobile exception was valid when the functionality of the car was unascertainable by the officers because the Fourth Amendment "does not require that officers ascertain the actual functional capacity of a vehicle in order to satisfy the exigency requirement."); *Maggard*, 2000 WL 680394 at *1.

Even assuming that the automobile exception did not apply in this case, the inevitable discovery exception applies. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means," then the evidence is purged of taint and should not be suppressed. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Specifically, the "inevitable discovery exception applies when the government proves 'by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.'" *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (internal citation omitted). Additionally, evidence derived from an illegal search or seizure need not be suppressed when that same evidence is "obtained independently from activities untainted by the . . . illegality." *Murray v. United States*, 487 U.S. 533, 537 (1988).

In this case, there is a reasonable probability that the firearm would have been discovered by lawful means if Cpl. Coots and Officer Carney had not searched the Kia at the scene of the accident. Once Cpl. Coots had discovered the cocaine in Porter's purse, which had been in the vehicle near where Scott would have sat, he had a valid belief that evidence of a crime was located in the Kia and that Porter and Scott were involved in some criminal activity. When both Porter and Scott were taken into custody, the car could have been towed without a search on scene because both occupants had been taken into custody. Subsequent to towing the vehicle, BPD officers sought and obtained a search warrant that was based only on evidence regarding the cocaine found in the vehicle. The firearm would have been found by lawful means through the execution of this search warrant. Even absent a warrant, Officer Ehbrecht testified that an inventory search was conducted pursuant to the BPD guidelines and procedures for safekeeping of the property. The form she completed shows she searched the area where the firearm was discovered, and therefore this search would have resulted in the discovery of the firearm as well.

Second, law enforcement was actively pursuing a substantial, alternative line of investigation regarding drug trafficking activity at the time when the vehicle was searched on scene. When Cpl. Coots searched Porter's purse, he discovered several packets of cocaine that appeared to be packaged for distribution. He also found two cell phones in addition to the two he noticed in the center console, as well as another drug that was later identified as PCP. At that point, Cpl. Coots had probable cause to believe that Porter and Scott were involved in the possession and distribution of drugs. Porter was then arrested. Further, upon re-contacting Scott to ask him about the drugs found in Porter's purse, Scott began acting nervous, sweating, and looking from side to side. Cpl. Coots detained him and conducted a search of Scott's person, which revealed $260 in loose cash. Cpl. Coots then placed Scott under arrest for possession of

11

controlled substances. At that point, the vehicle was going to be towed pursuant to the procedures and guidelines of the BPD policies and searched in accordance with the BPD inventory policy and/or a search warrant. The warrant obtained for the search of the Kia in this case was based solely on the discovery of the 15 cocaine packets discovered in Porter's purse. As such, law enforcement was actively pursuing a substantial, alternative line of investigation regarding Porter's and Scott's involvement in the possession and distribution of drugs that would have led to the discovery of the firearm. Therefore, the inevitable discovery exception also applies in this case.

Because the search in the search in this case was conduct pursuant to valid exceptions to the warrant requirement of the Fourth Amendment, the evidence obtained as a result of this search need not be suppressed. Further, any evidence or statements derived as a result of the search, including Scott's statements to Cpl. Coots and ATF agents, need not be suppressed as fruits of the poisonous tree. Denial of Scott's Motion to Suppress is appropriate.

### III. Recommendation

Accordingly, it is **RECOMMENDED** that Defendant's Motion to Suppress, (Doc. 60), be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: March 13, 2017