# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 13-03121-01-CR-S-MDH |
| CARLIS SCOTT, ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. (Doc. 2). After a Grand Jury indictment of unlawful possession of a firearm by a felon, (Doc. 1), Defendant Carlis Scott filed a motion to dismiss the indictment due to spoliation of evidence. (Doc. 67). Specifically, Scott alleged that the Government's destruction of certain articles of clothing violated his right to due process. (Doc. 67). On March 31, 2017, this Court held a hearing on this matter. (Doc. 83). Defendant was present at the hearing with his attorney, David Mercer. (Doc. 83). Casey Clark, Assistant United States Attorney, represented the United States. (Doc. 83). For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion, (Doc. 67), be **DENIED**.

## Background

On October 14, 2013, Defendant Carlis Scott, a convicted felon, was riding in an Avis rental car that crashed into a cellphone store in Bolivar, Missouri. (Docs. 74 & 83). Upon investigation of the vehicle's trunk, Bolivar police officers found a pistol contained in a trash bag of clothing. (*Id.*) They confiscated the gun and the fur coat in which the firearm was wrapped,

but did not seize the other garments in the bag. (*Id.*) When one officer questioned the car's driver, Margaret Porter, about the gun, she stated that she knew that Scott had a firearm. (Doc. 67-2).[1] However, she alleged that she did not know whether Scott had his gun in the vehicle at the time of the accident. (*Id.*) Porter revealed that Scott was her pimp, and that they were on their way from Kansas City to Springfield, where she was going to sell herself sexually for his benefit. (*Id.*)

The police arrested Scott and Porter.[2] (Docs. 74 & 83). At a recorded interrogation on October 18, 2013, Scott admitted that the gun belonged to him. (Gov't Ex. 16). Furthermore, from the Polk County Jail, Scott mailed two letters to an Avis agent requesting preservation of the clothing, which he claimed as his own.[3] (Gov't Ex. 21 & 21A). Scott also admitted to possession of the gun in one letter, recalling that the officers had found it in a "backpack full of men['s] clothing." (Pl. Ex. 21).

On December 17, 2013, the Grand Jury indicted Scott with felon in possession of a firearm. (Doc. 1). Scott then moved to dismiss the indictment on the ground that the Bolivar officers had released the clothing found with the gun when they returned the rental car to Avis. (Doc. 67). At a hearing held on March 31, 2017, Officer Donald Coots of the Bolivar Police Department, one of the investigating officers at the crash, testified that he and the other investigators had released the clothing because "there was a copious amount of [it]," making it impractical to store. (Doc. 83). The officers judged that Scott would not be able to use the clothing in his case in chief. (*Id.*) Additionally, Officer Coots thought himself capable of

---

[1] The Court admitted Defendant's Exhibit B, (Doc. 67-2), into evidence, without objection, for the limited purpose of the Hearing on Motion to Dismiss. (Doc. 83).
[2] The officers arrested Porter for possession of cocaine and PCP, which they found in her purse within the vehicle. (Docs. 74 & 83).
[3] This Court admitted the letters into evidence at the Hearing on Motion to Dismiss over defense counsel's objection that the Government could not identify Scott as the author since the letters only featured Scott's name and signature. (Doc. 83).

concluding that most of the clothing belonged to a man. (*Id.*) For these reasons, the officers released the clothing back to Avis in the rental car after photographing some of it spread out in the trunk and writing police reports about it. (*Id.*) According to Officer Coots, the investigators made their decision to release the clothing in accord with their training and normal practice. (*Id.*) Officer Coots testified that he did not release the clothing to hide evidence from Scott, and he emphasized that he had retained the fur coat in which the gun was wrapped. (*Id.*)

## Parties' Arguments

In his motion to dismiss, Defendant Scott argues that the Government violated his right to due process by the disposal of the clothing. (Doc. 67). Scott first claims that the clothing, had the police preserved it, would have clearly exculpated him since it was material and favorable to his case. (*Id.*) Specifically, Scott asserts that the clothing would have shown that Porter possibly possessed the firearm. (*Id.*) Without the garments, though, Scott alleges that can no longer make this showing. (*Id.*) Scott next argues that he should also prevail should the Court find the clothing potentially exculpatory, since the Bolivar investigators acted in bad faith by releasing it and by writing inconsistent reports about it. (*Id.*)

The Government contends that the officers did not violate Scott's due process rights. (Doc. 75). The Government first asserts that the clothing was not clearly exculpatory, since under the doctrines of constructive or joint possession, Scott could have possessed the gun regardless of whether he had any clothing in the trash bag. (*Id.*) The Government also notes that Scott admitted to owning the gun in an interrogation and claimed the gun and the clothing as his own in two letters. (*Id.*) Further, the Government maintains that even if the Court were to find the clothing potentially exculpatory, Defendant has not met his burden of showing bad faith on

3

the part of the officers because the officers released the clothing in accord with their normal practice. (*Id.*)  Moreover, the Government contends that Scott has alternative ways to present this exculpatory evidence, pointing to the photographs of some of the clothing, the officers' descriptions of the clothing, and the remaining possibility for Defendant to cross-examine the investigators. (*Id.*) Therefore, the Government argues that the Court should not dismiss the indictment. (*Id.*) The Court takes up the parties' arguments below.

## Discussion

**I.    The clothing at issue was neither clearly exculpatory nor destroyed in bad faith, so the Government has not violated Scott's right to due process.**

Due process requires the state to disclose to criminal defendants any exculpatory and material evidence. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Defendants can thus make a motion to dismiss an indictment due to spoliation of evidence. *See, e.g., United States v. Bugh*, 701 F.3d 888 (8th Cir. 2012). However, the Eighth Circuit disfavors dismissing indictments. *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992) (calling the "drastic step of dismissing an indictment" a "disfavored remedy").

To determine whether dismissal of an indictment is warranted due to spoliation of evidence, there are three separate tests. First, if the evidence will clearly exculpate the defendant, governmental destruction of it—whether done in good or bad faith—violates due process.[4] *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Second, if the destroyed evidence will only potentially exculpate the defendant, the accused must show that the government destroyed the evidence in bad faith. *Id.* at 58. Third, if

---

[4] "Government," as used here, can refer to either law enforcement officers or the prosecution. *See, e.g., Trombetta*, 467 U.S. 479 (law enforcement); *Brady v. Maryland*, 373 U.S. 83 (1963) (prosecution).

4

the government has destroyed evidence that has no exculpatory value whatsoever, there is no due process violation.[5] *Trombetta*, 467 U.S. at 488. As a final note, even if the district court denies the motion to dismiss the indictment, nothing precludes a defendant from raising the same issue before the jury in an effort to create reasonable doubt. *See Youngblood*, 488 U.S. at 59. Thus, the issue here is whether the unpreserved clothing was clearly exculpatory, potentially exculpatory, or non-exculpatory.

**A. The destroyed clothing would not have clearly exculpated the defendant since it was neither material nor favorable to his case.**

The suppression of clearly exculpatory evidence—whether done in good faith or bad faith—violates due process. *Brady*, 373 U.S. 83. Evidence is clearly exculpatory if: (1) the evidence was favorable to the defendant; and (2) the evidence was material either to the defendant's guilt or punishment. *Id.* at 87. Material evidence has a reasonable probability of changing the outcome of the proceeding if disclosed. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability undermines confidence in the outcome. *Id.*

Here, the clothing would not have clearly exculpated Defendant because it was neither favorable nor material to him. Under the doctrines of constructive or joint possession, the defendant could have possessed the firearm even if he had stored it in a bag containing Porter's clothing. *See United States v. Wells*, 469 F.3d 716, 719 (8th Cir. 2006) (citing *United States v. Walker*, 393 F.3d 842, 846-47 (8th Cir. 2005)) ("A defendant knowingly possesses a firearm if he has actual or constructive possession of it, and the possession can be sole or joint."). Hence, the released evidence was not favorable to Scott. As for the materiality of the clothing, the Government has produced other evidence in support of its case. This other evidence includes

---

[5] The Government did not raise this argument, so the Court does not need to address it.

5

Scott's interrogation and letters. (Gov't Ex. 16, 21, & 21A). Given the existence of the additional inculpatory evidence, it is hard to say that the Grand Jury would not have indicted Scott had the Government preserved the clothing. Hence, the destroyed clothing is not material.

Scott rebuts that the clothing, had the Government preserved it, would have clearly exculpated him. (Doc. 67). Scott first argues that the clothing would have been favorable to him since it "would potentially have provided exculpatory evidence that the firearm in question was actually in the possession of . . . Porter." (*Id.*) This argument fails on its face. Arguing that the evidence has the "potential[]" to exculpate does not show that the clothing would have clearly exculpated Defendant. Additionally, Scott asserts that he must have a bag full of what could arguably be Porter's clothing to show that Porter possessed the gun. (*Id.*) However, given the doctrines of constructive and joint possession, a conclusion that Porter possessed the gun would not necessarily preclude the jury from finding that Scott also possessed the gun. *See Wells*, 469 F.3d at 719. Because the unpreserved clothing is neither favorable nor material to Scott's case, it will not clearly exculpate him. Therefore, dismissal of the indictment is not warranted under the first test.

**B. If the Court were to find the evidence potentially exculpatory, Scott would still not prevail, because he has failed to show bad faith on the part of the investigating officers, and because he has alternative exculpatory evidence.**

When destroyed evidence is only potentially exculpatory, a defendant must show that the government destroyed it in bad faith. *Youngblood*, 488 U.S. at 58. An officer only acts in bad faith when he purposefully destroys evidence to deprive the defendant of it. *See United States v. Hawkins*, 531 F. App'x 342, 344 (4th Cir. 2013) (quotation omitted); *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005); *United States v. Reichell-Hernandez*, No. CR-11-1155-TUC-CKJ,

6

2011 WL 4971693 at *4 (D. Ariz. Sept. 8, 2011) (citing *United States v. Barton*, 995 F.2d 935, 935-36 (9th Cir. 1993) (certiorari denied)), *report and recommendation adopted*, No. CR-11-1155-TUC-CKJ, 2011 WL 4971721 (D. Ariz. Oct. 19, 2011). Merely negligent destruction of evidence does not amount to bad faith. *Bugh*, 701 F.3d at 895. If the state destroys evidence in accord with its normal practice, or if destroyed evidence probably would not have exculpated the defendant anyways, a court is less likely to give a bad-faith inference. *Youngblood*, 488 U.S. at 56. Furthermore, the existence of comparable exculpatory evidence weighs against a bad-faith finding. *Trombetta*, 467 U.S. at 490. The Supreme Court has noted that it implemented the bad-faith showing to limit the burden on the police to preserve evidence to "those cases in which [they] themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58.

The officers here did not destroy the evidence in bad faith, since they acted in accord with their normal practice and provided no indication that they believed Defendant could have used the clothing to exculpate himself. Indeed, because the investigators calculated that the clothing would be useless to Defendant's case in chief and too cumbersome to preserve, they released it to Avis with the rental car, in accord with their training and normal practice. (Doc. 83). However, the officers still took pictures of some of the clothing and drafted descriptive reports about it before its release, showing that they did not want to eliminate all trace of the clothing and thereby prevent Scott from using it in his favor. (*Id.*) Additionally, the officers saved the coat in which they found the gun, suspecting that this piece of evidence might be relevant. (*Id.*) The preservation of a coat that Scott could use in his defense corroborates Officer Coots's statement that the investigators did not think that the other clothing would prove relevant. (*Id.*)

7

Therefore, there is no sign that the officers acted in bad faith in releasing the clothing. *See Youngblood*, 488 U.S. at 56.

Scott argues that the evidence shows the officers did act in bad faith. (Doc. 67). He specifically points to inconsistencies in the police reports to suggest that the officers conspired to frame him with possession of the firearm. (*Id.*) However, inconsistencies do not necessarily prove bad faith. They could just result from negligent drafting, which does not amount to bad faith. *See Bugh*, 701 F.3d at 895 (citing *United States v. Houston*, 548 F.3d 1151, 1155 (8th Cir. 2008)). Scott also contends that the probable cause statement and other documents are "highly relevant" to the issue of bad faith since they reveal that on the day of the arrest, and prior to the clothing's release, the police believed that Porter "had a possessory interest" in the firearm. (Doc. 85).[6] Under the doctrines of constructive or joint possession, however, the police could have believed that both Porter and Scott possessed the firearm at the time of their arrests. *See Wells*, 469 F.3d at 719 (citations omitted). Scott has therefore failed to show that the police destroyed the clothing in a conspiracy to deprive him of exculpatory evidence relating to a gun he alleges they did not believe he possessed. Hence, neither the inconsistent police reports nor the probable cause statement should compel the Court to find bad faith.

The Supreme Court implemented the bad-faith requirement specifically to limit the burden on law enforcement officers to preserve every piece of evidence. *See Youngblood*, 488 U.S. at 58. Given that the bad-faith requirement exists to protect officers from excessively stringent evidentiary-storage standards, *id.*, this Court should not find bad faith on the part of Bolivar's police force for failing to preserve a bit of evidence that they found insignificant and burdensome to preserve. (Doc. 83).

---

[6] The Court granted Defendant's Motion for Admission of Exhibit, (Doc. 88), but finds the arguments contained therein unavailing. (Docs. 85 & 85-1).

Further, Defendant has access to evidence similar to the clothing, which weighs against a bad-faith finding. *Trombetta*, 467 U.S. at 490. Specifically, the officers took pictures of some of the clothing spread out in the trunk and drafted descriptive reports about it. (Doc. 83) Even without the actual clothing, Defendant can point to these images and reports to argue that the garments belonged to Porter. Moreover, Defendant will have the opportunity to cross-examine the officers about the clothing. (Doc. 75). Hence, Scott has other ways to present this evidence to the jury. Since there is no sign that the officers acted in bad faith, and since Scott has other ways to present this potentially exculpatory evidence, this Court should not dismiss the indictment due to the destruction of potentially useful evidence.

Because the evidence is not clearly exculpatory, and because Scott did not provide sufficient evidence of bad faith on the part of the Bolivar Police Department, he has failed to show why the Court should dismiss the indictment. This does not preclude Scott from raising the evidentiary-destruction issue at trial, however. *See Youngblood*, 448 U.S. at 59. Indeed, Scott could argue that the missing clothing creates a reasonable doubt that he possessed the gun. Before the finder of fact is the proper place to raise this argument, though; not in a pretrial motion to dismiss the indictment. *See id.*

## Conclusion

For the reasons stated, it is hereby **RECOMMENDED** that Defendant's Motion, (Doc. 67), be **DENIED**.

/s/     *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: June 19, 2017